UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| Thomas Hartford, ) | Case No. 13bk37655 |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| ──────────────────── ) | |
| ) | |
| Schaumburg Bank & Trust Company, N.A., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Adversary Case No. 14ap00100 |
| ) | |
| Thomas Hartford, ) | |
| ) | Judge Timothy A. Barnes |
| Defendant. ) | |
| ) | |

TIMOTHY A. BARNES, Judge

MEMORANDUM DECISION

The matter before the court arises out of the Complaint [Adv. Dkt. No. 1] (the "Complaint"), filed by Schaumburg Bank & Trust Company, N.A. ("Schaumburg Bank") in the above-captioned adversary proceeding (the "Adversary"), objecting to the discharge of the debtor Thomas Hartford III (the "Debtor") under 11 U.S.C. § 727(a)(7). Schaumburg Bank alleges that the Debtor should be denied a discharge due to acts taken with respect to the bankruptcy case of Hartford & Sons, LLC ("Hartford & Sons"), of which company the Debtor was the sole member and manager. Specifically, Schaumburg Bank alleges that the deposit of two checks made out to Hartford & Sons into the Debtor's father's bank account violated section 727(a)(2), and that the disappearance of the company's financial books violated section 727(a)(3).

The matter was tried before the court in a one-half day trial that took place October 29, 2014 (the "Trial"). At Trial, the court noted that the pretrial briefing addressed facts and an argument that were not addressed in the Complaint – that the Debtor also violated section 727(a)(4) by failing to disclose the checks and other payments to the Debtor's father on the Statement of Financial Affairs for the bankruptcy case of Hartford & Sons. Schaumburg Bank then moved to amend the Complaint to include the section 727(a)(4) argument.

For the reasons set forth herein, the court holds that Schaumburg Bank did not satisfy its burden with respect to any of the arguments under section 727(a)(7) as it did not prove by a preponderance of the evidence that the Debtor committed an act specified in paragraph (2), (3) or (4) of section 727(a) with respect to the bankruptcy case of Hartford & Sons.

This Memorandum Decision constitutes the court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). A separate judgment order will be entered pursuant to Bankruptcy Rule 9021.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in, or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). An objection to a debtor's discharge may only arise in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (J); *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004); *Hunt v. O'Neal (In re O'Neal)*, 436 B.R. 545, 550 (Bankr. N.D. Ill. 2010) (Schmetterer, J.).

Accordingly, final judgment is within the scope of the court's authority.

## PROCEDURAL HISTORY

In considering Schaumburg Bank's oral motion to amend the Complaint and objection to discharge, the court has considered the evidence and arguments presented by the parties at Trial and reviewed the Complaint, the attached exhibits submitted in conjunction therewith and each of the following:

(1) Debtor's Answer to Complaint Objecting to Debtor's Discharge [Adv. Dkt. No. 9];

(2) Joint Pretrial Statement [Adv. Dkt. No. 42] (the "Joint Pretrial Statement");

(3) Trustee's Motion to Approve a Settlement with Thomas Hartford, Jr. [Case No. 13bk34832, Dkt. No. 100]; and

(4) Objection of Schaumburg Bank & Trust Company, N.A. to Trustee's Motion to Approve a Settlement with Thomas Hartford, Jr. [Case No. 13bk34832, Dkt. No. 108].

At Trial, all of Schaumburg Bank's exhibits were admitted, most with no objection from the Debtor. Exhibits 1-6 were admitted over the Debtor's objections. The exhibits offered by the Debtor were admitted without objection, with the exception of Debtor's Exhibit 3, which was admitted over the objection of Schaumburg Bank.[1]

---

[1] The parties objected to certain of the exhibits on the basis of relevance. Joint Pretrial Statement at 21-23. Federal Rule of Evidence 403 grants the court the authority to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

2

The court has considered the procedural history and previous court filings in the Adversary, including:

(1) Schaumburg Bank & Trust Company, N.A.'s Motion for Summary Judgment as to Count I of Its Complaint [Adv. Dkt. No. 25];

(2) Debtor's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and related filings [Adv. Dkt. Nos. 35, 36 and 37];

(3) Schaumburg Bank & Trust Company, N.A.'s Reply Memorandum in Support of Its Motion for Summary Judgment [Adv. Dkt. No. 39]; and

(4) Order Denying Plaintiff's Motion for Summary Judgment [Adv. Dkt. No. 41].

The court also considered Schaumburg Bank's oral motion to amend the Complaint, Tr. 23-27, Oct. 29, 2014, and subsequent objection by the Debtor, Tr. 22-24, Oct. 29, 2014, which the court discusses in more detail below.

Though the foregoing does not constitute an exhaustive list of the filings in the Adversary, the court has taken judicial notice of the contents of the docket in this matter and the docket of a related case. *See In re Meltzer*, 516 B.R. 504, 506 & n.2 (Bankr. N.D. Ill. 2014) (Goldgar, J.) (authorizing a bankruptcy court to take judicial notice of its own docket and the records of other courts in related matters).

## FINDINGS OF FACT[2]

This matter constitutes the latest chapter in the ongoing dispute between the Debtor, Hartford & Sons and Schaumburg Bank, in this instance as to whether the Debtor will be denied his discharge upon the completion of his chapter 7 case because of alleged actions taken by the Debtor in the bankruptcy case of Hartford & Sons.

The Debtor in the bankruptcy case underlying this adversary proceeding, Thomas Hartford III, is the sole member and manager of Hartford & Sons, a business that previously engaged in sewer, water and utility contracting.

---

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. However, in a bench trial, such as adversary proceedings in the bankruptcy court, "there are no problems of juror prejudice." *Henderson v. Legal Helpers Debt Resolution, L.L.C. (In re Huffman)*, 505 B.R. 726, 753 (Bankr. S.D. Miss. 2014). "Excluding relevant evidence in a bench trial ... on the basis of 'unfair prejudice' is a useless procedure." *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981). The judge may weigh and determine the relevance of each exhibit in the course of concluding the material facts.

As such, all objections based on relevance were overruled. Tr. 7, Oct. 29, 2014.

[2] To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such. Adjudicative facts may also be found and determined elsewhere throughout this Memorandum Decision.

Prior to the commencement of this bankruptcy case, on July 8, 2011, Hartford & Sons entered into a loan transaction with Advantage National Bank Group, now known as Schaumburg Bank, for an asset-based, revolving line of credit in the principal amount of $2,000,000, with a maturity date of July 6, 2012. This loan was secured by a blanket lien over the assets of Hartford & Sons. The Debtor was a co-obligor on this loan.

On October 6, 2011, C & M Pipe & Supply, one of the primary materials suppliers of Hartford & Sons, obtained a judgment against Hartford & Sons in the amount of $491,833 in the Circuit Court of Cook County. Subsequently, C & M Pipe & Supply issued numerous citations to discover the assets of Hartford & Sons. Toward the end of July 2013, all of the accounts of Hartford & Sons located at Schaumburg Bank and MB Financial Bank were frozen due to these citations.

Upon the freezing of the accounts of Hartford & Sons, Thomas Hartford, Jr., the Debtor's father, previous manager of Hartford & Sons and estimator and project manager for the business, began paying employees and other business expenses of Hartford & Sons from his personal account.[3] In essence, Hartford & Sons was forced to use the Debtor's father's bank account to run its business. In addition to the support given by the Debtor's father, customers of Hartford & Sons directed money owed to Hartford & Sons to the vendors of Hartford & Sons. Such support helped to keep Hartford & Sons functioning while its accounts were frozen.

On July 25, 2013, Schaumburg Bank issued a notice of default to Hartford & Sons and to the Debtor with respect to the loan held by Schaumburg Bank. Shortly thereafter, on August 30, 2013, Hartford & Sons petitioned for reorganization with this court under chapter 11 of the Bankruptcy Code. Case No. 13bk34832, Dkt. No. 1 (Cassling, J.).

On that same day, but prior to the filing of the bankruptcy petition, the Debtor's father endorsed and deposited into his personal account the first of two vendor checks payable to Hartford & Sons (together, the "Checks"). The first check, in the amount of $24,680.70, was from Warren F. Thomas Plumbing Company. Similarly, on September 12, 2013, the Debtor's father endorsed and deposited into his own account another check payable to Hartford & Sons in the amount of $11,701.19 from Powers & Sons Construction Company, Inc. In summary, one check was deposited prior to the commencement of the bankruptcy case of Hartford & Sons, and one check was deposited thereafter.[4]

While it was the practice of the Debtor in his role with Hartford & Sons to follow up with companies regarding late payables, the Debtor did not do so with respect to the Checks. Neither payment to the Debtor's father appeared on the Statement of Financial Affairs for the bankruptcy

---

[3] The Debtor's father had occasionally paid payroll obligations of Hartford & Sons before the one year period prior to the commencement of the bankruptcy case of Hartford & Sons. Tr. 47-48 & 55, Oct. 29, 2014.

[4] The Debtor's father reached a settlement with the chapter 7 trustee for the bankruptcy case of Hartford & Sons to return the moneys from the Checks to the estate. Case No. 13bk34832, Dkt. No. 100. The court acknowledges that the trustee's motion references the amount of $11,709.19 for the check from Powers & Sons Construction Company, Inc.; however, the court will rely on Schaumburg Bank's Exhibit 7, which is an image of a cancelled check drawn from the account of Powers & Sons Construction Company, Inc. for $11,701.19.

4

case of Hartford & Sons. The Debtor explained that omission by stating that he was unaware that his father had deposited the Checks until it was raised at the section 341 meeting of creditors for the Hartford & Sons bankruptcy case held on January 30, 2014.

The Debtor further explained that during the first half of September, 2013, rather than concentrate on receivables, he focused on trying to save the business. On behalf of Hartford & Sons, the Debtor negotiated with Schaumburg Bank regarding the terms of a cash collateral order for the bankruptcy case of Hartford & Sons. On September 13, 2013, these negotiations collapsed, thus Hartford & Sons was forced to terminate its employees and close its doors. Joint Pretrial Statement at 18. Upon leaving on that day, the Debtor locked the office door as he had done at the end of every day for the previous six years. Tr. 15, Oct. 29, 2014. Four days later, the bankruptcy case of Hartford & Sons was converted to a case under chapter 7 [Case No. 13bk34832, Dkt. No. 36] and a chapter 7 trustee was appointed in that case on the next day [Case No. 13bk34832, Dkt. No. 38].

Some time during the first week of October, the Debtor went to the office of Hartford & Sons with counsel to prepare the schedules for the bankruptcy case of Hartford & Sons. The Debtor stated that, at that time, everything in the office was in order. Tr. 112, Oct. 29, 2014. The Debtor next visited the premises of Hartford & Sons on November 21, 2013, at which time he discovered that certain of the records were missing and the room was in disarray. *Id.* at 115.

Before the records disappeared, they had been kept in fifteen to twenty file cabinets within the offices of Hartford & Sons, which was within a building shared with another business. *Id.* at 110-11. The file cabinets themselves had not contained a lock, nor had the file cabinets been locked by any means of alternative security. *Id.* at 110. Certain of the employees of Hartford & Sons held keys to the office, but the Debtor believes that all keys to the office had been returned and placed in the office once the business ceased its operations. *Id.* at 120.

The Debtor states that when he left the office after his October visit with counsel, he secured the records by the ordinary means of locking the office door. *Id.* at 116. The Debtor therefore concludes that someone had impermissibly gained access to the office and absconded with the company's financial records. *Id.* at 111-12 & 115.

Nonetheless, the Debtor was able to prepare the schedules and Statement of Financial Affairs for the bankruptcy case of Hartford & Sons [Case No. 13bk34832, Dkt. Nos. 53 & 54] and the chapter 7 trustee was able to prepare a report of assets for that case [Case No. 13bk34832, Dkt. No. 99].

On February 13, 2014, Schaumburg Bank filed the Complaint.

## SUMMARY JUDGMENT

Rather than proceeding directly to Trial, Schaumburg Bank first sought summary judgment in the matter. In its Motion for Summary Judgment, Schaumburg Bank alleged the Debtor's conduct in the bankruptcy case of Hartford & Sons provided grounds under sections 727(a)(2), (3) and (4) to deny the Debtor's discharge in his personal case. *See* 11 U.S.C. § 727(a)(7) (making applicable to a debtor's conduct in another case, *inter alia*, sections 727(a)(2), (3) and (4)).

As to section 727(a)(2), the element of intent on the part of the Debtor is a factual issue that is almost never appropriate for summary judgment. *Estate of Cora v. Jahrling (In re Jahrling)*, 510 B.R. 820, 829 (Bankr. N.D. Ill. 2014) (Cox, J.) ("Whether a debtor possessed the requisite intent . . . is a subjective inquiry and generally, not suitable for determination by summary judgment.").

As to section 727(a)(3), the court found that additional evidence was needed regarding whether the Debtor's failure to act in providing additional security to the office of Hartford & Sons beyond locking the office was justified under all the circumstances of the case. *See* 11 U.S.C. § 727(a)(3). Thus the issue was ill-suited for summary judgment.

As to section 727(a)(4), the Complaint did not provide facts or an argument supporting an allegation with regard to this section and a party is not entitled to summary judgment on a request that is not pled in the underlying complaint. *Walton v. Bank of Am.*, No. 1:11-CV-00685-SEB, 2014 WL 1350132, at *3 (S.D. Ind. Mar. 28, 2014) (*citing Conner v. Ill. Dept. of Nat. Res.*, 413 F.3d 675, 679 (7th Cir. 2005) (a party may not amend his complaint through argument in briefing on a motion for summary judgment)).

For these reasons, the court denied Schaumburg Bank's Motion for Summary Judgment and scheduled the Trial.

## DISCUSSION

In order to address the evidence presented at Trial, the court will first consider Schaumburg Bank's oral motion to amend its complaint to include an argument under section 727(a)(4) made at Trial by Schaumburg Bank. The court will then address the two arguments presented by Schaumburg Bank that require intent on the part of the Debtor – those under sections 727(a)(2) and (4). Finally, the court will discuss Schaumburg Bank's argument under section 727(a)(3).

A.  <u>Amendment of Complaint</u>

At Trial, Schaumburg Bank made an oral motion, addressing the disconnect between Schaumburg Bank's Complaint and the arguments Schaumburg Bank intended to present; that is that the Complaint did not allege grounds on the basis of section 727(a)(4), but instead only touched upon sections 727(a)(2) and (3) with respect to section 727(a)(7). Schaumburg Bank's arguments with respect to summary judgment had previously made it clear that Schaumburg Bank was pursuing arguments under section 727(a)(4). Schaumburg Bank orally moved pursuant to Bankruptcy Rule 7015 to amend its Complaint to include section 727(a)(4), and the Debtor objected. Among his grounds for objecting, the Debtor argued that this court, in the context of summary judgment, had made it a condition that any such amendment be made in writing prior to Trial. The Debtor therefore argued that Schaumburg Bank was foreclosed from making the oral motion. Because of the disagreement over the court's earlier rulings, the court took the oral motion under advisement so as to be able to review the previous transcript.

Having reviewed both the transcript of the hearing for the motion for summary judgment and the docket in this case, the court notes that it made no such ruling, though it did note that such a motion would be advisable. As a result, the court overrules the objection insofar as it relies on these grounds, and will consider the oral motion on the merits.

6

As to the merits, Bankruptcy Rule 7015(a)(2) provides, in pertinent part, that "a party may amend its pleading with the court's leave. The court should freely give leave when justice so requires." Fed. R. Bankr. P. 7015(a)(2). A party may amend its complaint if: (1) it has not unduly delayed the request; (2) it is not acting in bad faith or with a dilatory motive; (3) the opposing party will not be unduly prejudiced; and (4) the amendment is not futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014); *Enesco Grp., Inc. v. Campanaro (In re Enesco Grp., Inc.)*, Adv. No. 11ap00402, No. 07bk00565, 2013 WL 4045756, at *9 (Bankr. N.D. Ill. Aug. 8, 2013) (Goldgar, J.). Such oral motions at trial are uncommon, but are not prohibited. *See, e.g., Johnson v. Portfolio Recovery Assocs., LLC*, 682 F.Supp.2d 560, 588 (E.D. Va. 2009) (allowing plaintiff's oral motion to amend complaint).

Having already heard Schaumburg Bank's argument with respect to section 727(a)(4) at the hearing for summary judgment and having objected in his Memorandum in Opposition to Schaumburg Bank's Motion for Summary Judgment [Adv. Dkt. No. 35], the Debtor has had fair warning and an opportunity to address these issues. The Debtor is therefore not unduly delayed or prejudiced by the amendment. Furthermore, the Debtor made no suggestion at Trial of bad faith on the part of Schaumburg Bank. Finally, the amendment is not futile because the proposed amendment would have been allowed had counsel done as the court advised and sought to amend prior to Trial. *Cf. Glick v. Koenig*, 766 F.2d 265, 268-69 (7th Cir. 1985). As a result, the Debtor's objection is overruled and Schaumburg Bank's oral motion to amend the Complaint is granted.

B.   Objection to Discharge

The actions that serve as the basis for the Complaint are not actions that have taken place in the Debtor's above-captioned bankruptcy case, but rather in the bankruptcy case of the Debtor's business, Hartford & Sons. The Bankruptcy Code anticipates this possibility — that a debtor may act inappropriately in a bankruptcy case *other than* the debtor's — and has expressly incorporated a prohibition on such conduct in section 727(a)(7).

Section 727(a)(7) of the Bankruptcy Code provides, in pertinent part, that:

> The court shall grant a debtor a discharge, unless the Debtor has committed any act specified in [sections 727(a)](2), (3), (4), (5), or (6) on or within one year before the date of the filing of the petition, or during the case, *in connection with another case*, under this title concerning an insider.

11 U.S.C. § 727(a)(7) (emphasis added).

The party objecting to a debtor's discharge bears the burden of proof. Fed. R. Bankr. P. 4005; *see Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966 (7th Cir. 1999). The objecting party must meet this burden by a preponderance of the evidence. *Scott*, 172 F.3d at 966-67. To advance the policy of providing a debtor a fresh start, objections to a debtor's discharge are to be construed strictly against movants and liberally in favor of a debtor. *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996). "The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor." *Soft Sheen Prods., Inc. v. Johnson (In re Johnson)*, 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) (Squires, J.).

To prevail on an objection to discharge under section 727(a)(7), the movant must prove that: (1) the debtor has committed an act specified in sections 727(a)(2) through (6); (2) the act occurred either on or within one year before the date of the filing of the petition or during the debtor's case;

7

and (3) the act was committed in connection with another case concerning an insider. 11 U.S.C. § 727(a)(7); *Morgan v. Morgan (In re Morgan)*, Adv. No. 11ap00580, No. 09bk42248, 2013 WL 4067591, at *4 (Bankr. N.D. Ill. Aug. 12, 2013) (Cassling, J.).

As to the second and third elements, the facts alleged in this proceeding all occurred within one year before the Debtor's petition date or after the filing of the bankruptcy petition, and both parties agree that Hartford & Sons is an insider within the meaning of 11 U.S.C. § 101(31)(A)(iv). Joint Pretrial Statement at 8. What remains is the first element, and the parties agree that section 727(a)(7) would deny the Debtor his discharge if Schaumburg Bank were successful in demonstrating that the Debtor had violated either of sections 727(a)(2), (3) or (4) in the bankruptcy case of Hartford & Sons.

In this regard, Schaumburg Bank first alleges that the Debtor intended to defraud creditors because deposit of the Checks was done with the intent to ensure that the Debtor's father would be repaid as soon as possible. *See* 11 U.S.C. § 727(a)(2). Second, Schaumburg Bank alleges that the Debtor failed to preserve records from which the financial condition or business transactions of Hartford & Sons could be ascertained. *See* 11 U.S.C. § 727(a)(3). Finally, Schaumburg alleges that the Debtor made a false oath or account when he omitted payments to his father on the Statement of Financial Affairs filed in the bankruptcy case of Hartford & Sons. *See* 11 U.S.C. § 727(a)(4)(A).

As the section 727(a)(2) and (a)(4) allegations each require a showing of the Debtor's intent, the court will consider each of these two allegations first, followed by Schaumburg Bank's section 727(a)(3) allegation.

1. 11 U.S.C. § 727(a)(2)

Section 727(a)(2) provides that the court shall grant a debtor's discharge, unless—

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).

To succeed on this element of its argument, Schaumburg Bank must prove that: (1) the Debtor transferred property belonging to the estate arising in the bankruptcy case of Hartford & Sons; (2) either within one year of the filing of the petition or after the date of the filing of the petition; and (3) with intent to hinder, delay or defraud a creditor of the estate. *See In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd sub nom. Kontrick v. Ryan*, 540 U.S. 443 (2004); *Structured Asset Servs., L.L.C. v. Self (In re Self)*, 325 B.R. 224, 237 (Bankr. N.D. Ill. 2005) (Squires, J.).

8

The Debtor *must* act with the intention of hindering, delaying or defrauding creditors. *See Bennett & Kahnweiler Assocs. v. Ratner (In re Ratner)*, 132 B.R. 728, 731 (N.D. Ill. 1991). At Trial, Schaumburg Bank therefore sought to demonstrate that the Debtor intended to hinder, delay or defraud the creditors of Hartford & Sons when he transferred property belonging to the bankruptcy estate of Hartford & Sons. Schaumburg Bank was successful in demonstrating both that the Checks belonging to Hartford & Sons were deposited into the Debtor's father's personal checking account and that the Debtor wanted to repay his father quickly for his various advances made to the company. Tr. 47, Oct. 29, 2014. No further connection was made.

Schaumburg Bank relies on dicta from a Colorado bankruptcy case for the proposition that this is enough, that the intent element of section 727(a)(2) is satisfied under circumstances such as these because "fraudulent intent is presumed when a debtor who is insolvent transfers property to a family member." *See Booth v. Booth (In re Booth)*, 70 B.R. 391, 396 (Bankr. D. Colo. 1987).

When determining intent, however, the court should consider the debtor's whole pattern of conduct. *In re Yonikus*, 974 F.2d 901, 905-06 (7th Cir. 1992); *Rezin v. Barr (In re Barr)*, 207 B.R. 168, 176 (Bankr. N.D. Ill. 1997) (Schmetterer, J.). Intent to deceive may be established through direct evidence or inference, *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004) (Schmetterer, J.) (citing *In re Sheridan*, 57 F.3d 627 (7th Cir. 1995)), and because a debtor is unlikely to testify that his intent was fraudulent, the court may deduce such intent from all the facts and circumstances of a case, *Filmar, Inc. v. White (In re White)*, 63 B.R. 742, 744 (Bankr. N.D. Ill. 1986) (Eisen, J.).

Inferring intent from one family member's desire to see another repaid goes beyond a simple deduction, however. Such a request seeks to have the court rule that transactions between family members are *per se* intentionally fraudulent. That is something that is beyond the discretion of a trial court and not consistent with the foregoing standards.

This court has warned in the past about the improvident use of *per se* rules. *See Molfese v. Bonomi (In re Bonomi)*, Adv. No. 13ap00119, No. 11bk26652, 2014 WL 640982, at *6-8 (Bankr. N.D. Ill. Feb. 18, 2014) (Barnes, J.). "What one court rules in isolation should only cautiously and after great inquiry be applied in a broader perspective. . . . There must always be some room for the trial court to apply the underlying statute itself." *Id.* As the Seventh Circuit has recently stated, "[i]t is important not to allow judicial glosses . . . to supersede the statute itself." *Krieger v. Educ. Credit Mgmt. Corp.*, 713 F.3d 882, 884 (7th Cir. 2013).

*Booth* is not precedential in this jurisdiction and this court declines to apply it here in the manner suggested by Schaumburg Bank.[5] Were the court to follow *Booth*, and the court declines to do so, such presumptive fraudulent intent must be corroborated by other circumstances of this case.

Schaumburg Bank attempted, though unsuccessfully, to identify such circumstances by showing that the Debtor was aware of and permitted the Checks to be deposited by the Debtor's

---

[5] Upon a reading of *Booth*, the court notes that Schaumburg Bank has truncated the quotation it relied on for its argument. The *Booth* court does not profess a presumption of fraudulent intent but only notes that other courts have recognized the presumption. The *Booth* court also notes that the transferee was not a family member of the debtor before analyzing the evidence surrounding the transfers in that case. *See Booth*, 70 B.R. at 397.

9

father, inferring this from the Debtor's failure to follow up on incoming payments from customers of Hartford & Sons in the manner he normally would have. Schaumburg Bank also tried to prove that one of the signatures on the check from Powers & Sons Construction Company, Inc. was that of the Debtor's.

The court is not convinced.

Schaumburg Bank did not show that the Debtor allowed his father to deposit the Checks, let alone that he did so because he wanted to evade creditors. The Debtor testified that he had no knowledge that his father deposited the Checks until the section 341 meeting for Hartford & Sons,[6] and explained that his attention was focused at that time on negotiating a cash collateral order to save the business. The court found the Debtor's testimony to be credible and finds that the Debtor's explanations are plausible – especially so in light of the Debtor's father's role in providing cash management to Hartford & Sons after the freezing of its accounts, *see* Tr. 131, Oct. 29, 2014, and the additional difficulty the Debtor would have had in tracing customer receivables at a time when such customers were directly paying the vendors of Hartford & Sons. The Debtor testified that he did not believe the payments were due at the time at issue, *id.* at 41, which the court also found to be credible.

Accordingly, Schaumburg Bank has failed to carry its burden with respect to section 727(a)(2) and the Debtor will not be denied his discharge under section 727(a)(7) on this basis.

2.    11 U.S.C. § 727(a)(4)

Section 727(a)(4)(A) of the Bankruptcy Code provides that the court shall not grant the debtor a discharge if the debtor knowingly and fraudulently, in or in connection with the bankruptcy case made a false oath or account. 11 U.S.C. § 727(a)(4)(A).

To prevail on a denial of discharge under section 727(a)(4)(A), it must be proven that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011); *see also Rutili v. O'Neill (In re O'Neill)*, 468 B.R. 308, 327 (Bankr. N.D. Ill. 2012) (Schmetterer, J.) (substituting "fraudulent intent" with "an intent to deceive").

Under section 727(a)(4)(A), not only must a debtor have knowingly made false statements and/or omissions, they must have been made – or omitted – with fraudulent intent. A debtor's petition, schedules, statement of financial affairs, statements made at a section 341 meeting, testimony given at a Bankruptcy Rule 2004 examination, and answers to interrogatories all constitute statements under oath for purposes of section 727(a)(4)(A). *Self*, 325 B.R. at 245; *John Deere Co. v. Broholm (In re Broholm)*, 310 B.R. 864, 880 (Bankr. N.D. Ill. 2004) (Schmetterer, J.).

To satisfy its burden under section 727(a)(4)(A), Schaumburg Bank must not only prove the Debtor made a false oath, but also that the Debtor acted with the requisite intent, as it needed to prove under section 727(a)(2). Consistent with its argument, Schaumburg Bank must demonstrate

---

[6] The Debtor stated at Trial that, though one of the signatures on the check from Powers & Sons Construction Company, Inc. looked like his, he had no recollection of indorsing it. Tr. 109, Oct. 29, 2014.

to the court that the Debtor omitted the payments to his father on the Statement of Financial Affairs for the bankruptcy case of Hartford & Sons and intended to do so in order to deceive the creditors of Hartford & Sons.

The parties do not dispute that the payments to the Debtor's father were not set forth on the Statement of Financial Affairs of Hartford & Sons.[7] Schaumburg Bank was also able to show that the Debtor instructed his counsel to mark the box for "none" on section 3(c) of the Statement of Financial Affairs for the bankruptcy case of Hartford & Sons. Tr. 49, Oct. 29, 2014.

As with section 727(a)(2) Schaumburg Bank sought to have the court infer the intent. Schaumburg Bank asked the court to infer the Debtor's fraudulent intent on the basis of the Debtor's "reckless indifference to or disregard of the truth," *see U.S. v. Swenson (In re Swenson)*, 381 B.R. 272, 295 (Bankr. E.D. Cal. 2008), coupled with the Debtor's strong interest in seeing his father repaid.

Schaumburg Bank has not shown, however, that the Debtor omitted the payments with fraudulent intent. There is no evidence showing that the Debtor did not intend to provide a complete financial picture of Hartford & Sons to all parties involved in its bankruptcy case. Beyond nondisclosure of the Checks on the Statement of Financial Affairs, no corroborating evidence of deceptive intent whatsoever in terms of the Debtor's "reckless indifference to or disregard of the truth" has been offered by Schaumburg Bank.

The court found the Debtor's testimony regarding the Checks to be credible. And as discussed in the context of section 727(a)(2), *supra*, the court declines to adopt a *per se* rule inferring the Debtor's fraudulent intent under these circumstances.

Thus, Schaumburg Bank has not met its burden with respect to section 727(a)(4)(A) and its objection to discharge under section 727(a)(7) fails with respect to this argument as well.

3.  11 U.S.C. § 727(a)(3)

The court shall deny a debtor a discharge under section 727(a)(3) if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

---

[7] To be clear, the only of the two payments that could have potentially appeared on the Statement of Financial Affairs for Hartford & Sons was that of the check that was cashed by the Debtor's father before the filing of the case. *See* B7 (Official Form 7) § 3(c) (Apr. 2013) (requiring debtor to disclose all payments to insiders "made within one year immediately *preceding* the commencement of th[e] case" to which the Form pertains (emphasis added)); *Reid v. Presbitero (In re First Choice Drywall, Inc.)*, Adv. No. 12ap00625, No. 10bk06981, 2012 WL 4471570, at *2 & *5-6 (Bankr. N.D. Ill. Sept. 25, 2012) (Schmetterer, J.).

Section 727(a)(3) puts an affirmative duty on a debtor to produce books and records that accurately document its financial affairs. *Scott*, 172 F.3d at 969-70; *Juzwiak*, 89 F.3d at 427-28; *Bodenstein v. Wasserman (In re Wasserman)*, 332 B.R. 325, 332 (Bankr. N.D. Ill. 2005) (Schmetterer, J.). This provision is designed to provide creditors and trustees with enough information to ascertain the debtor's financial condition with substantial completeness and accuracy without the need to resort to *post hoc* forensic investigation to assemble the debtor's financial transactions from chaos. *Juzwiak*, 89 F.3d at 427-28 (quotations omitted).

Each of *Scott* and *Juzwiak* were cases in which the bankruptcy court considered a debtor's failure to produce books and records and found such failure excused under section 727(a)(3). The Seventh Circuit, in reversing the bankruptcy courts in each instance, stressed the affirmative duty of the debtor to keep and provide records from which the debtor's bankruptcy could be administered. *Scott*, 172 F.3d at 969; *Juzwiak*, 89 F.3d at 427.

Those cases are inapposite to the case at bar, however, for two reasons. First, each of *Scott* and *Juzwiak* focused on the debtor's failure to *keep* accurate records. That has not been alleged here,[8] though the absence of records would make that question hard to determine if it were. Second and more important, however, is that unlike *Scott* and *Juzwiak*, the failure here appeared to have no bearing on the trustee's ability to administer the bankruptcy case of Hartford & Sons. Though the company's bankruptcy case had been converted to chapter 7 and a trustee had been appointed, the Debtor here fulfilled the company's obligations to submit schedules and statements on behalf of the company, sworn under penalty of perjury, and testified at the section 341 meeting as the representative of the company. The trustee was able to conclude the section 341 meeting, issue a report of assets, set a bar date and take other steps to administer the case.[9]

As such, the court cannot conclude that the harsh result dictated by *Scott* and *Juzwiak* for failure to keep books and records necessarily follows a mere allegation of failure to preserve books and records.

That does not, however, end the enquiry. The court must still consider the language of the statute, and in so doing, (1) whether the debtor failed to *preserve* the books and records of Hartford & Sons, and (2) whether such failure, if it occurred, was unjustified.

As to the first element, Schaumburg Bank as the plaintiff bears the burden of proof. Fed. R. Bankr. P. 4005; *Baccala Realty, Inc. v. Fink (In re Fink)*, 351 B.R. 511, 522 (Bankr. N.D. Ill. 2006) (Squires, J.). As a determination of the sufficiency of a debtor's books and records must be decided on a case-by-case basis, *Clean Cut Tree Serv. v. Costello (In re Costello)*, 299 B.R. 882, 888 (Bankr. N.D. Ill. 2003) (Schmetterer, J.), so too must a determination of a debtor's action or failure to take certain action to preserve financial records, *see Fed. Deposit Ins. Co. v. Kottwitz (In re Kottwitz)*, 42 B.R. 566, 569 (Bankr. W.D. Mo. 1984).

---

[8] Schaumburg Bank made clear that, as to section 727(a)(3), its argument was that the Debtor failed to preserve the books and records of Hartford & Sons. Tr. 168, Oct. 29, 2014.

[9] A review of the docket of the bankruptcy case of Hartford & Sons reveals no indication that the chapter 7 trustee has had any difficulty administering the case, and Schaumburg Bank has offered no evidence of such in the matter at bar. The court also notes upon further review of the docket that the Debtor's father has reimbursed the bankruptcy estate of Hartford & Sons for the payments at issue in this matter.

Both parties agree that some the records of Hartford & Sons, including its financial records, were missing from the premises on November 21, 2013. But such records being missing does not make it a *fait accompli* that the Debtor failed to preserve the records. November 21, 2013 was more than two months after the company's case was converted and a trustee appointed. During that period, it was the trustee's obligation to preserve the assets of the estate, including the company's books and records. 11 U.S.C. § 704(a).

Schaumburg Bank was afforded the opportunity at Trial to demonstrate that that absence of financial records was a result of the Debtor's failure. It could have, for example, attempted to adduce evidence that contradicted the Debtor's testimony that he had delivered possession of the books and records to the trustee when he handed over control of the company's premises. It could have sought testimony from the trustee regarding when, if at all, the trustee had visited the premises and what he had found there.

The court is, unfortunately, left to speculate, as Schaumburg Bank did nothing other than rely on the absence of the books and records and the Debtor's testimony regarding the same.[10]

Left with that testimony and the matters that the court can take under advisement, the court cannot conclude much more than the following timeline:

On August 30, 2013, Hartford & Sons commenced a chapter 11 bankruptcy proceeding. Case No. 13bk34832, Dkt. No. 1. The company continued to operate as a debtor and debtor-in-possession.

On September 13, 2013, Hartford & Sons closed its doors and ceased to operate. Joint Pretrial Statement at 18. Upon leaving on that final day, the Debtor locked the door to the office in the same manner as he had at the end of every other day for the previous six years. Tr. 51, Oct. 29, 2014.

On September 17, 2013, the judge in the company's bankruptcy case converted the case to one under chapter 7. Case No. 13bk34832, Dkt. No. 36. The following day, a chapter 7 trustee was appointed in the company's bankruptcy case. Case No. 13bk34832, Dkt. No. 38.

Some time in early October, the Debtor went to the office of Hartford & Sons with counsel to prepare the schedules for the bankruptcy case of Hartford & Sons. Tr. 112, Oct. 29, 2014. At that time, the books and records were still on the premises. *Id.* When the Debtor left, he locked the door to the office and premises in same manner as he had before. *Id.* at 116.

The Debtor next visited the premises of Hartford & Sons on November 21, 2013, *id.* at 112, at which time he discovered that the books and records were missing and the office was in disarray, *id.* at 115.

---

[10] So little was done in this regard that the court is left also to speculate as to what books and records are missing. Schaumburg Bank made no attempt to quantify the nature of the absence. Though it may be impossible to prove a negative, certainly more could have been done in this regard.

13

The foregoing, which is the only evidence the court has been provided in this regard, if accepted, establishes that any failure to preserve the company's books and records was the responsibility of the trustee, not the Debtor. It establishes that the books and records were at the premises at a time they had become the trustee's responsibility, and then later went missing. Enough time had passed that the trustee could easily have made alternative arrangements to secure the books and records had he deemed them insecure.

Presuming, perhaps, that the court would find the Debtor's testimony lacking in credibility as a result, Schaumburg Bank spent an inordinate amount of time quizzing the Debtor on whether he should not have bought a bike lock for five to ten dollars to secure the company's fifteen to twenty file cabinets or loaded the books and records into the Debtor's car.[11] Such arguments ignore the foregoing, that the only evidence offered regarding the books and records was that they were under the control of the trustee when they went missing, and had been for sufficient time for the trustee to make alternative arrangements to secure them.[12] This effort did not successfully impeach the Debtor's testimony.

To be clear, as before, the court finds the Debtor's testimony credible in this regard, therefore any failure cannot, as a matter of law, be attributed to the Debtor. Thus Schaumburg Bank has failed to establish its cause of action.

Even had Schaumburg Bank been successful in demonstrating that the absence of the books and records was a result of the Debtor's failure, the bank would still fail in its objection if it could be shown that Debtor's conduct was "justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

It is not entirely clear whether Schaumburg Bank or the Debtor bears the burden regarding justification. As stated before, the initial burden under section 727 falls on the objecting party. Fed. R. Bankr. P. 4005; *Fink*, 351 B.R. at 522. However, justification appears to be a defense, and thus the responsibility of the Debtor. Worded as it is, "unless such act or failure to act was justified under all of the circumstances of the case," the statute also appears to put the burden on the Debtor.

Nothing other than what has previously been discussed herein has been offered in this regard.

---

[11] As to the former, counsel for Schaumburg Bank argued that his five-year old daughter could have and did kick down an internal door such as protected the company's office. Given the court's conclusion as to responsibility for the books and records, it need not consider such an allegation, especially in absence of evidence as to the similarities of counsel's internal door and the internal door of the offices of Hartford & Sons. The court also need not concern itself with how a bike lock could absolutely secure that number of cabinets.

As to the latter, counsel fails to understand that taking the books and records in the manner he suggested would have been impermissible, as the Debtor after the appointment of a trustee was not entitled to exercise control over property of the estate.

[12] For the same reason, the court need not consider whether all of the keys to the premises had been tendered to the trustee, whether others had easy access to the office and whether the premises had a history of theft. These are each attempts to lay blame on the Debtor for something that the evidence shows was no longer the Debtor's responsibility.

More often than not, courts that consider this provision guide their analysis on whether the failure has resulted in an inability to prepare accurate schedules and statement of financial affairs for the debtor, or, in the alternative, whether the failure has made such preparation unduly burdensome on a trustee. *Juzwiak*, 89 F.3d at 427-28; *Krohn v. Frommann (In re Frommann)*, 153 B.R. 113, 117 (Bankr. E.D.N.Y. 1993) ("A court should not be required to speculate as to any loss of assets that have been in the debtor's possession, nor should the trustee or creditors be required to reconstruct the debtor's affairs.").

The only evidence before the court is that the schedules and statement were completed by the Debtor, who also testified as the company's representative at the section 341 meetings. Further, the record of the bankruptcy case of Hartford & Sons shows no indication that the absence of books and records had any bearing on the administration of that case, and absolutely no evidence has been offered by Schaumburg Bank to controvert that appearance.

Taken together, Schaumburg Bank has approached both of these elements of its Complaint in much the same way it has the other elements: it has presumed that one fact has determined the matter and that it need do nothing more. That simply is not the case, as both the burdens and the seriousness of an objection to discharge require more. *Juzwiak*, 89 F.3d at 427; *Johnson*, 98 B.R. at 367.

As such, the court concludes that, to the extent any failure regarding the books and records may be attributed to the Debtor, such a failure is justified under the facts and circumstances of the company's case.

## CONCLUSION

As noted above and for the foregoing reasons, Schaumburg Bank has not proven its cause of action under section 727(a)(7), and judgment will therefore be rendered in favor of the Debtor on the sole count of the Complaint.

A separate order will be issued concurrent with this Memorandum Decision.

Dated: March 2, 2015

_____
Timothy A. Barnes
United States Bankruptcy Judge

15